UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MINA G. ZOHER, M.D.,

    Plaintiff,

vs.                          Case No. 2:11-cv-00086-FtM-29DNF

NHC HEALTHCARE SYSTEM, INC. and
NAPLES COMMUNITY HOSPITAL, INC.,

    Defendant.
_____

**OPINION AND ORDER**

This matter comes before the Court on the defendants' NCH Healthcare System, Inc. and Naples Community Hospital (collectively, "defendants") Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Doc. #11). Plaintiff Mina G. Zoher, M.D. ("plaintiff" or "Dr. Zoher") filed a Memorandum of Law in Opposition to Defendants' Motion to Dismiss (Doc. # 17). Defendants filed a Reply to Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss (Doc. # 20). Because the Court finds that it lacks subject matter jurisdiction, the motion to dismiss will be granted.

**I.**

Dr. Zoher is a medical doctor licensed to practice medicine in the State of Florida. (Doc. #1 , ¶10.) Defendants own and/or operate two medical facilities located in Naples, Florida. Dr. Zoher submitted applications seeking a staff position at Naples Community Hospital ("NCH") in both locations. The NCH Medical

Executive Committee denied Dr. Zoher's application, and after a hearing, the Hearing Panel recommended that Dr. Zoher's application be denied. Thereafter, a Review Panel appointed by the NCH Board of Trustees also recommended that Dr. Zoher's application be denied. As a result, the NCH Board of Trustees took final action denying Dr. Zoher's application. Defendants thereafter made an adverse action report to the National Practitioner Data Bank ("NPDB") under Title IV of Public Law 99-660, as amended, and 45 C.F.R. Part 60. The adverse report indicated that Dr. Zoher was denied initial appointment and privileges.

Plaintiff contends the NPDB Guidebook, published by the Secretary of the Department of Health & Human Services, states that the denial of medical staff privileges based on a practitioner's failure to meet a health care institution's established criteria is not a reportable event. Instead, a medical institution should only report the denial of staff privileges if the denial is based on a lack of professional conduct on the part of the practitioner. Plaintiff contends his denial was based on Section 7E.2 of defendants' Credentialing Policy, which states, "[o]nly those individuals who can document that they are highly qualified in all regards will be appointed to the medical staff." (Doc. #1, ¶16.) Plaintiff asserts that his denial was not based on lack of competence, but was instead based on his inability to meet

defendants' "high" standards for appointment.  (Id.)  As a result, Dr. Zoher contends the adverse report was wrongfully submitted

**II.**

Plaintiff filed a five count Complaint (Doc. #1) setting forth claims for injunctive and declaratory relief pursuant to the Health Care Quality Improvement Act, 42 U.S.C. § 11101, et. seq. ("HCQIA") (Counts I and II), injunctive and declaratory relief pursuant to Fla. Stat. § 395.0193 (Counts III and IV), and monetary damages for defamation pursuant to Florida state law (Count V).  Plaintiff asserts federal jurisdiction over Counts I and II under the federal question statute, 28 U.S.C. § 1331, and supplemental jurisdiction under 28 U.S.C. § 1367 as to the remaining state claims.

Plaintiff asserts that Count I arises under HCQIA (Doc. #1, ¶4), and therefore federal jurisdiction is proper under § 1331 (Doc. #1, ¶8).  Defendants seek to dismiss Count I because HCQIA does not create a private cause of action.  Plaintiff makes no responsive arguments as to whether the HCQIA creates a private cause of action, but instead argues that dismissal is improper because defendants improperly filed an adverse report after he was denied staff privileges by defendants.  Further, plaintiff claims that because defendants have responded to the Secretary of Health and Human Services after the Complaint was filed, it has partially performed the relief sought in Count I, thereby acknowledging plaintiffs' entitlement for relief.  For the reasons discussed

below, Count I is dismissed for lack of subject matter jurisdiction.

Congress enacted the HCQIA to improve health care and reduce the number of incompetent physicians. See 42 U.S.C. § 11101. Congress determined that this could be attained only through "effective professional peer review," and enacted the HCQIA to eliminate many deterrents to effective professional peer review. See 42 U.S.C. § 11111(a)(1). In the medical profession, peer review is a "process by which physicians and hospitals evaluate and discipline staff doctors[.]" Bryan v. James E. Holmes Regional Med. Ctr., 33 F.3d 1318, 1321 (11th Cir. 1994), cert denied, 514 U.S. 1019, 115 S.Ct. 1363 (1995). The "HCQIA grants limited immunity, in suits brought by disciplined physicians, from liability for money damages to those who participate in professional peer review activities." Id. Under the HCQIA, if the peer review action "meets certain due process and fairness requirements, then those participating in such a review process shall not be liable under any state or federal law for damages for the results." Id. at 1321-22. The Eleventh Circuit, as well as other circuits, has held that there is no private cause of action under HCQIA to a physician in connection with the peer review process. Morris v. Emory Clinic, Inc., 402 F.3d 1076, 1083 (11th Cir. 2005); Bok v. Mutual Assur., 119 F.3d 927, 929 (11th Cir. 1997). See also Hancock v. Blue Cross-Blue Shield, 21 F.3d 373

(10th Cir. 1994); Goldsmith v. Harding Hosp., Inc., 66 F.3d 310 (3d Cir. 1995); Wayne v. Genesis Med. Ctr., 140 F.3d 1145 (8th Cir. 1998); Singh v. Blue Cross/Blue Shield of Mass., Inc., 308 F.3d 25, 45 (1st Cir. 2002). Since there is no private cause of action, there is no claim that "arises under" federal law within the meaning of 28 U.S.C. § 1331.

Plaintiff also asserts that Count II arises under the laws of the United States, citing Rule 57 of the Federal Rules of Civil Procedure and the Declaratory Judgment Act, 28 U.S.C. §§2201-2201. (Doc. #1, ¶5). Neither assertion is correct. A federal court's jurisdiction is derived from the United States Constitution and Congress. "[A]s the Supreme Court has recognized since time immemorial, the Constitution accords Congress the exclusive power to determine the scope of district and circuit court jurisdiction." Allapattah Servs. v. Exxon Corp., 362 F.3d 739, 761 (11th Cir. 2004), citing Sheldon v. Sill, 49 U.S. (8 How.) 441 (1850). "[T]he Federal Rules of Civil Procedure neither limit nor expand district court jurisdiction." Am. Canoe Ass'n v. Attalla, 363 F.3d 1085, 1088 (11th Cir. 2004), citing Fed. R. Civ. P. 82. Additionally, the Declaratory Judgement Act does not confer any jurisdiction upon the court. GTE Directories Publ'g Corp. v. Trimen Am., 67 F.3d 1563, 1567 (11th Cir. 1995)("At the outset we note that the Declaratory Judgment Act does not enlarge the jurisdiction of the federal courts but rather is operative only in

respect to controversies which are such in the constitutional sense . . . Thus the operation of the Declaratory Judgment Act is procedural only." (internal citation and punctuation omitted)). Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

Accordingly, it is now

**ORDERED**:

(1)  The Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Doc. #11) is **GRANTED** to the extent that Counts I and II are dismissed without prejudice for lack of subject matter jurisdiction and Counts III, IV, and V are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

(2) The Clerk shall enter judgment accordingly, terminate all deadlines, and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this __14th__ day of November, 2011.

_____
JOHN E. STEELE
United States District Judge

Copies: Counsel of record